**Andreita CORREA, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 79 Civ. 283 (RJW).**

United States District Court, S.D. New York.

May 1, 1984.

Legal Services for the Elderly, New York City, for plaintiff; Toby Golick, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Jane E. Bloom, Asst. U.S. Atty., New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

On July 19, 1983, this Court reversed a decision of the Secretary of Health and Human Services (the "Secretary")[1] denying plaintiff's application for disability insurance benefits, pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Plaintiff's attorneys, associated with the Legal Services for the Elderly, now move for allowances of attorneys' fees and litigation costs in the amount of $16,-151.50 pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (the "EAJA"). They seek reimbursement from the United States for attorneys' fees and costs incurred between January 1979 and November 1983 in connection with plaintiff's application for disability insurance benefits. For the reasons hereinafter stated, plaintiff's motion is granted in part and denied in part.

## BACKGROUND

The procedural history of this case is unusually lengthy and complex. Plaintiff applied for disability insurance benefits on October 5, 1977. Her application was initially denied on December 27, 1977, and was denied again after reconsideration on April 3, 1978. At plaintiff's request, a *de novo* hearing was held on June 15, 1978. On August 2, 1978, an Administrative Law Judge ("ALJ") rendered a written decision denying benefits on the ground that plaintiff's impairment did not prevent her from engaging "in light and sedentary physical activity" and that she had the "residual

---

1. Margaret M. Heckler succeeded Richard S. Schweiker as Secretary of Health and Human Services on March 9, 1983, and was substituted as defendant in this action, pursuant to Section 205(g) of the Social Security Act, and Rule 25(d)(1), Fed.R.Civ.P.

functional capacity to engage in the various jobs cited during the course of the hearing." On November 22, 1978, this determination became the final decision of the Secretary when it was adopted by the Appeals Council.

Plaintiff, who had not been represented by counsel during the aforementioned proceedings, filed this action through her primary attorney on January 18, 1979 (the "first district court proceedings"). This Court, by decision and order entered on November 26, 1979, dismissed plaintiff's action, on the grounds that the decision of the Secretary was supported by substantial evidence and that "good cause" did not exist for a remand.

Plaintiff thereafter appealed that decision to the Court of Appeals for the Second Circuit. On appeal, plaintiff argued for reversal or remand, on the ground that the Medical-Vocational Guidelines, 20 C.F.R. Part 404(P), which had been enacted after the denial of her application for disability insurance benefits, should be applied to her case because she had established inability to return to her former work. After filing a brief opposing reversal of this Court's decision, counsel for the Secretary suggested permitting plaintiff to reapply for benefits and staying the appeal pending disposition of the new application. The Second Circuit directed the parties to attempt to stipulate as to the disposition of the appeal.

On April 16, 1980, the Secretary submitted to the Second Circuit a memorandum from the Appeals Council which stated, *inter alia*, that the Appeals Council would not agree to a voluntary remand. Instead, the Secretary submitted a proposed stipulation which would stay the appeal and permit plaintiff to start over with a new application. Plaintiff, in turn, submitted a proposed counter-order which would remand the case to the Secretary for a new hearing.

On May 1, 1980, the Court of Appeals remanded the case to this Court with instructions to resolve the conflict between the parties or to remand the case to the Secretary. This Court, with the agreement of the parties, vacated its prior judgment and remanded the case to the Secretary for further action.

On August 20, 1980, the Appeals Council vacated its prior determination, and remanded the case to an ALJ. The Appeals Council also directed the ALJ to obtain a consultative orthopedic examination, a psychological capacities evaluation, a consultative psychiatric examination with psychological testing, and a residual functional capacities examination. The Appeals Council directed the ALJ to evaluate the case sequentially, as ordered by the Court, and to return the case with a recommended decision.

In accordance with this order, plaintiff was sent to various doctors for evaluation over the next five months. She also submitted additional evidence from her own doctors. A new hearing was held on March 31, 1981, at which plaintiff appeared and testified. A vocational expert testified as well.

The ALJ issued his recommended decision on May 28, 1981. Based on the vocational and medical evidence, the ALJ found that plaintiff could not engage in her past work as a sewing machine operator. He determined that although plaintiff retained the functional capacity for sedentary work, her skills were not transferable to other work because of her age and education. Therefore, using the medical-vocational regulations, the ALJ concluded that plaintiff had been under a disability since October 5, 1977.

This recommended decision was sent to the Appeals Council, which, on July 23, 1981, again remanded the case to the ALJ for further administrative action. The Appeals Council gave two reasons for this remand: first, that there was a conflict in the residual functional capacity assessments of two of the doctors; and second, that further clarification was needed of the finding that plaintiff's skills were not transferable to other jobs.

After the Appeals Council's rejection of the ALJ's recommended decision and re-

mand to the ALJ, plaintiff moved for an order of this Court directing the Secretary to complete all administrative proceedings expeditiously or, in the alternative, to award benefits to plaintiff on the basis of the ALJ's recommended decision. This motion was withdrawn upon plaintiff's receipt of the final administrative decision in December 1981.

In accordance with the remand by the Appeals Council, the ALJ conducted another hearing on September 22, 1981, and reviewed all the evidence. Once again, the ALJ concluded that plaintiff had been disabled since October 1977. With respect to the two conflicting medical reports in question, the ALJ indicated that he had given little weight to either, finding neither particularly reliable. Another hearing was held at which both plaintiff's physician and a vocational expert testified. The ALJ once again reviewed the evidence, and in a decision dated October 21, 1981, he concluded that plaintiff had been disabled since October 1977.

On December 22, 1981, the Appeals Council issued its final decision rejecting the ALJ's recommended decisions. The Appeals Council stated that plaintiff's impairments did not prevent her from performing her past work as a sewing machine operator. Further, the Appeals Council found that "no physical, mental or emotional disorders are medically demonstrated that could reasonably be expected to impose significant restrictions on claimant's ability to perform work related functions." Finally, although they never saw or heard plaintiff, and despite the contrary findings by the ALJ, the Appeals Council determined that plaintiff's allegations of pain were not credible, in light of both her testimony regarding her daily activities and the objective medical findings.

On February 12, 1982, plaintiff moved for an order of this Court, pursuant to Rule 12(c), Fed.R.Civ.P., reversing the decision of the Secretary and awarding disability benefits to plaintiff (the "second district court proceedings"). The Secretary filed a cross-motion for an order affirming the administrative decision. The Court heard oral argument on the cross-motions, and, on July 19, 1983, issued its decision reversing the determination of the Secretary and remanding the case to the Secretary for a calculation and award of benefits. In this decision, this Court enumerated the well-established principles governing judicial review of disability benefits determinations of the Secretary and concluded that the Secretary's decision in the instant case ran "seriously afoul" of these principles. The Secretary did not appeal this determination and plaintiff has begun to receive benefits. Thereafter, plaintiff filed the instant motion for attorneys' fees and costs.

### DISCUSSION

Section 2412(d)(1)(A) of the EAJA provides for a mandatory award of attorneys' fees to a qualified prevailing party in certain civil actions brought by or against the United States, unless the "position of the United States was substantially justified."[2] This section is a specific statutory exception to the "American rule" which provides that each litigating party must assume its own counsel fees, absent a common-law exception or a contrary legislative provision. *See* H.R.Rep.No. 1418, 96th Cong., 2d Sess. 8–9 (the "House Report"), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4986–88.

Tracking the language of the EAJA, the Secretary raises three arguments against an award of fees in this case. First, she argues, plaintiff cannot be considered a "prevailing party" within the terms of the

**2.** Section 2412(d)(1)(A) of the EAJA reads as follows:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

EAJA for those segments of this litigation which plaintiff lost. Relying on the statutory reference to a "civil action," the Secretary makes the additional argument that plaintiff is not entitled to recover costs and fees incurred in connection with the administrative proceedings in this case. Third, the Secretary asserts that the EAJA does not authorize any award of fees in this case because the Secretary's position was "substantially justified." In the alternative, the Secretary contends, even if this Court finds that plaintiff is a "prevailing party" and that the Secretary's "position" was not "substantially justified," plaintiff's fee request should be reduced because it is excessive.

*A. The "Prevailing Party" Requirement*

█ In order to qualify for an award of attorneys' fees under the EAJA, plaintiff must prove that she is a "prevailing party" within the meaning of that statute. It is clear from the legislative history of the EAJA that the prevailing party requirement should be interpreted liberally, consistent with the law that has developed under other fee-shifting statutes. *See* House Report at 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News at 4990; *McGill v. Secretary of HHS*, 712 F.2d 28, 31 (2d Cir.1983); *Williamson v. Secretary of HUD*, 553 F.Supp. 542, 544 (E.D.N.Y. 1982); *Photo Data, Inc. v. Sawyer*, 533 F.Supp. 348, 351 (D.D.C.1982). In the instant case, the Secretary argues that no fees should be awarded to plaintiff for time spent by plaintiff's attorneys in connection with the first district court proceedings which resulted in a judgment for defendant. However, this decision was vacated by the Second Circuit. In their interpretations of the EAJA and other fee-shifting statutes, the courts have generally held that the test of whether a person is a prevailing party is whether such party es-

sentially succeeds in obtaining the relief he seeks in his claims on the merits. *See, e.g., Hanrahan v. Hampton,* 446 U.S. 754, 756–59, 100 S.Ct. 1987, 1988–90, 64 L.Ed.2d 670 (1980); *Othen v. Ann Arbor School Bd.,* 699 F.2d 309, 313 (6th Cir.1983); *McGill v. Secretary of HHS, supra,* 712 F.2d at 31; *Smith v. University of North Carolina,* 632 F.2d 316, 346–47 (4th Cir.1980); *Morrison v. Ayoob,* 627 F.2d 669, 671 (3d Cir. 1980), *cert. denied,* 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981) quoting *Bagby v. Beal,* 606 F.2d 411, 415 (3d Cir.1979); *Grubbs v. Butz,* 548 F.2d 973, 975–76 (D.C. Cir.1976). In the instant case, plaintiff's position on her first appeal to the district court was vindicated by the Second Circuit and the relief she sought was granted by that court. Thus, plaintiff succeeded in obtaining the relief she sought from the district court upon her appeal of the first determination by the Secretary. Accordingly, plaintiff must be deemed to be a "prevailing party" within the terms of the EAJA in connection with the first proceedings in the district court.[3]

█ The Secretary also argues that plaintiff cannot be considered a prevailing party with regard to the motion for an injunction to expedite the administrative proceedings on remand because that motion was withdrawn at the conclusion of the administrative proceedings. Plaintiff responds that she is entitled to attorneys' fees incurred in connection with this motion because the motion served as a "catalyst" that brought about compliance by defendants. Adhering to the liberal interpretation of the prevailing party requirement espoused in the legislative history, the courts have held that a party need not obtain formal judicial relief following a trial on the merits to recover attorneys' fees under the EAJA. In several cases, courts have awarded fees upon a showing that litigation initiated by the plaintiff served as

---

**3.** Defendant's reliance on *McCann v. Coughlin,* 698 F.2d 112, 129–30 (2d Cir.1983) is misplaced. In that case, the Second Circuit held that where meritorious claims are clearly separable from nonmeritorious claims, an attorney's fee award under 42 U.S.C. § 1988 may be reduced to ex-

clude costs incurred in connection with the unsuccessful claims. However, in the instant case, all of plaintiff's claims were eventually successful, and thus there are no non-meritorious claims to segregate from the rest of plaintiff's contentions.

a "catalyst" that motivated the defendant to provide the primary relief in the manner desired. Often the remedial measures taken by the defendant subsequent to the filing of the lawsuit mooted the claims of the plaintiff. *See, e.g., Othen v. Ann Arbor School Bd., supra,* 699 F.2d at 313; *Morrison v. Ayoob, supra,* 627 F.2d at 671; *Williams v. Miller,* 620 F.2d 199, 202 (8th Cir.1980); *Bonnes v. Long,* 599 F.2d 1316, 1319 (4th Cir.1979) *cert. denied,* 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982); *Ross v. Horn,* 598 F.2d 1312, 1321–22 (3d Cir.1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *Westfall v. Board of Commissioners of Clayton County,* 477 F.Supp. 862, 868 (N.D.Ga. 1979); *Lackey v. Bowling,* 476 F.Supp. 1111, 1113–15 (N.D.Ill.1979); *Armstrong v. Reed,* 462 F.Supp. 496, 499–500 (N.D.Miss. 1978).

However in order to succeed on this "catalyst" theory, plaintiff must demonstrate some "clear causal relationship between the litigation brought and the practical outcome realized." *American Constitutional Party v. Munro,* 650 F.2d 184, 188 (9th Cir.1981). *See also Williamson v. Secretary of HUD, supra,* 553 F.Supp. at 544. Although plaintiff is not required to prove that her motion was the sole cause of the expeditious review allegedly provided by the Secretary, she must establish that her motion was a "necessary and important factor" in obtaining such review. *Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir. 1978). *See also Morrison v. Ayoob, supra,* 627 F.2d at 671; *Bonnes v. Long, supra,* 599 F.2d at 1319. In this regard, "the chronological sequence of events is an important factor in determining whether or not it can be inferred that the defendants guided their actions in response to the plaintiff's lawsuit." *United Handicapped Federation v. Andre,* 622 F.2d 342, 347 (8th Cir.1980); *see also Robinson v. Kimbrough,* 652 F.2d 458, 465 (5th Cir.1981).

■ In the instant case, the chronology does not support plaintiff's contention that her motion was the catalyst that induced the Secretary to comply voluntarily with her request for expedited administrative review. Although plaintiff interposed the motion at issue in an attempt to hasten the administrative review process, it is not at all clear that this review proceeded with uncharacteristic swiftness. In September 1981, plaintiff filed the motion for expedited administrative proceedings, complaining that the five-month administrative review conducted by the Secretary after remand from this Court was unacceptably long. Nevertheless, the review conducted by the Secretary after plaintiff's motion was filed still spanned some four months. Moreover, plaintiff has provided this Court with no evidence that the filing of plaintiff's motion had any effect on the timing or results of the final Appeals Council decision in this case. Thus, plaintiff has not met her burden of establishing a clear causal relationship between the motion brought and the practical outcome realized. *American Constitutional Party v. Munro, supra,* 650 F.2d at 188. Accordingly, plaintiff may not be regarded as a prevailing party with respect to the motion for expedited administrative review, and is not entitled to recover her litigation expenses incurred in connection with that motion.

### B. The "Substantial Justification" Requirement

■ Under the EAJA, a prevailing party is entitled to attorneys' fees unless the Court finds that "the position of the United States was substantially justified..." 28 U.S.C. § 2412(d)(1)(A). *See also Environmental Defense Fund v. Watt,* 554 F.Supp. 36, 40 (E.D.N.Y.1982), *aff'd* 722 F.2d 1081 (2d Cir.1983); *Photo Data, Inc. v. Sawyer, supra,* 533 F.Supp. at 351; *Alspach v. District Director of Internal Review,* 527 F.Supp. 225, 228 (D.Md.1981). The test for determining whether the government's position is substantially justified is "essentially one of reasonableness."[4] *Environmen-*

---

**4.** Because the Senate Judiciary Committee rejected an amendment which would have changed the pertinent language from "substantially justified" to "reasonably justified," some

*tal Defense Fund v. Watt, supra,* 722 F.2d at 1085, quoting House Report at 10, *reprinted in* 1980 U.S.Code Cong. and Ad. News at 4989. The Secretary bears the burden of proof on this issue, and "where a party has had to engage in lengthy administrative proceedings before final vindication of his or her rights in the courts, the government should have to make a strong showing to demonstrate that its action was reasonable." House Report at 18, *reprinted in* 1980 U.S.Code Cong. and Ad.News at 4997. *See also Boudin v. Thomas,* 732 F.2d 1107, at 1116 (2d Cir.1984); *Environmental Defense Fund v. Watt, supra,* 722 F.2d at 1085; *Natural Resources Defense Council, Inc. v. EPA, supra,* 703 F.2d at 712. The nature of this burden was described by both the House and Senate Reports in identical terms:

> The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.

House Report at 11, *reprinted in* 1980 Code Cong. and Ad.News at 4990; S.Rep. No. 253, 96th Cong., 1st Sess. 7.[5]

Plaintiff seeks attorneys' fees for the efforts of her attorneys in all phases of this action, arguing that as to all such phases the Secretary's position was not substantially justified. With respect to the first proceedings in this Court, plaintiff argues that the Secretary was not justified in failing to advise this Court, while this case was *sub judice,* that the Secretary had agreed to apply the Medical Vocational Guidelines to cases which had been decided prior to the enactment of those Guidelines. Defendant failed to notify this Court, prior to this Court's decision of October 31, 1979, of the October 10, 1979 stipulation and order in *Lewis v. Harris,* K–78–1267 (D.Md. Oct. 10, 1979). Pursuant to that stipulation, the Secretary agreed to notify a designated class of individuals, including plaintiff, of the new regulations and of their right to file a new application for benefits under these regulations. This notice also was to advise those litigants with actions pending against the Secretary that they "may wish to request that the Court not act until [their] new application has been decided." The Secretary's failure to bring this agreement to this Court's attention, and thereby to spare the parties as well as the courts needless ventures into

---

courts have suggested that the statutory test requires something more than ordinary reasonableness. *See e.g., Spencer v. NLRB,* 712 F.2d 539, 558 (D.C.Cir.1983); *cert. denied,* — U.S. ——, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). *Natural Resources Defense Council, Inc. v. EPA,* 703 F.2d 700, 721 n. 8 (3d Cir.1983) (Hunter J., dissenting); *Wolverton v. Schweiker,* 533 F.Supp. 420, 424 (D.Idaho 1982).

**5.** The EAJA does not make clear whether the statutory reference to "the position of the United States" encompasses only the position of the government in litigation over the agency action, or the underlying position of the agency as well. Although the circuits which have addressed this issue have split, the Second Circuit recently held that "'the position of the United States' refers only to the government's position when it litigates over an agency action." *Boudine v. Thomas, supra,* at 1115. The Courts of Appeals for the Tenth, District of Columbia, Fourth and Federal Circuits have also concluded that the statute refers to the government's litigating position only. *See United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1487 (10th Cir.1984); *Spencer v. NLRB, supra,* 712 F.2d at 546–47;

*Tyler Business Services, Inc. v. NLRB,* 695 F.2d 73, 75–76 (4th Cir.1982); *Broad Avenue Laundry and Tailoring v. United States,* 693 F.2d 1387, 1390–91 (Fed.Cir.1982). The Third Circuit, in a divided opinion, held that the courts should examine both the government's litigation position and the underlying agency action. *See Natural Resources Defense Council, Inc. v. EPA, supra,* 703 F.2d at 706–12. *See also S & H Riggers & Erectors, Inc. v. O.S.H.R.C.,* 672 F.2d 426, 429 (5th Cir. Unit B 1982) (referring to the government's "position before this court"). However in the instant case, the government's "position," that plaintiff has not sustained her initial burden of proving disability, has remained constant throughout all phases of this case. Moreover, the Second Circuit has recently made clear that "[i]n assessing the reasonableness of the government's position, we must examine the full course of the litigation .... the litigation position which the court may scrutinize embraces the full period during which the case was pending..." *Environmental Defense Fund, Inc. v. Watt, supra,* 722 F.2d at 1085–86.

the administrative and judicial processes, must be described as unreasonable and warrants an award of attorneys' fees under the EAJA. As the Second Circuit has recently stated: "[w]e find it incumbent upon the government to abandon its opposition to the other party as soon as it becomes apparent that its litigation stance is not substantially justified." *Environmental Defense Fund, Inc. v. Watt, supra,* 722 F.2d at 1086. *See also, Ellis v. United States,* 711 F.2d 1571, 1576–77 (Fed.Cir. 1983).

■ Similarly, plaintiff's request for attorneys' fees incurred in connection with the proceedings before the Second Circuit should also be granted. This Court cannot find substantial justification for the Secretary's refusal until the eve of oral argument either to agree to follow the *Lewis* procedure or to stipulate to a remand, especially in light of the fact that the relief sought by plaintiff was ultimately granted by the Second Circuit and this Court. The Secretary has made no effort to sustain her burden by showing justification for continuing to press for an affirmance by the Second Circuit of the first district court order, despite her prior assent to the *Lewis* stipulation. *See Environmental Defense Fund v. Watt, supra,* 722 F.2d at 1086 ("The government may lack substantial justification for its position even though it does not insist upon an unreasonable stance through to the resolution of a case.")[6]

■ Attorneys' fees must also be awarded to plaintiff for the efforts of her attorneys in connection with the second district court proceedings. The Court agrees with the Secretary that a finding that the decision of the Secretary was not supported by substantial evidence does not always require a concurrent finding that the Secretary's position was not substantially justified within the meaning of the EAJA. *See, e.g., Kerr v. Heckler,* 575 F.Supp. 455, 458 (S.D.Ohio 1983). *Hornal v. Schweiker,* 551 F.Supp. 612, 617 (M.D.Tenn.1982); *Wolverton v. Schweiker, supra,* 533 F.Supp. at 425 & n. 14. Rather, it appears from the legislative history that Congress contemplated an award of attorneys' fees under the EAJA only in those cases in which it could fairly be said that it was unreasonable for the government to contest the plaintiff's claim. However, after a careful review of the record filed herein as well as the decisions of this Court based on that record, the Court concludes that the position of the Secretary in seeking the affirmance of her determination on remand was not substantially justified. This Court found in reversing the Secretary that her decision, rejecting the decision of the ALJ on two separate occasions, ran "seriously afoul" of Second Circuit law and that the rationale on which the decision was based was factually and legally insufficient. Moreover, this Court concluded that there was *no* evidence to support the Secretary's conclusion that plaintiff had the unimpaired ability to return to her former employment. The Court is aware that there may be few cases in which the Secretary's position is not substantially justified and mandates an award of fees under the EAJA. In the instant case, however, there simply was "little or no evidence support-

---

**6.** The Secretary opposes an award of fees for work performed by Kathleen Coles on the ground that attorney Coles' request does not contain the requisite documentation. Attorney Coles authored plaintiff's brief in the Second Circuit and argued the case in that Court. The rule that contemporaneous time records are a prerequisite to an award of attorneys' fees in this Circuit was established prospectively in *New York State Ass'n for Retarded Child., Inc. v. Carey* ("Willowbrook"), 711 F.2d 1136, 1147 (2d Cir.1983). In *Willowbrook,* the Second Circuit recognized that it would be unfair to deny the plaintiffs all attorneys' fees simply because they failed to maintain contemporaneous time records throughout the litigation in view of the fact that the contemporaneous records requirement had not been previously established. Instead, the court awarded attorneys' fees for the number of compensable hours that plaintiff's attorneys spent on the substantive portions of the litigation. In the instant case, this Court is bound by the Second Circuit's holding in *Willowbrook,* and may not deny plaintiff attorneys' fees for the efforts of Kathleen Cole, whose participation in this case predated the contemporaneous time records requirement established in *Willowbrook.*

ing the government's position" in the second district court proceedings. *Hornal v. Schweiker, supra,* 551 F.Supp. at 617. Under such circumstances, the Court is obligated to award attorneys' fees to plaintiff. *See e.g., Hornal v. Schweiker, supra,* 551 F.Supp. at 617; *Wolverton v. Schweiker, supra,* 533 F.Supp. at 425 & n. 14.

### C. The "Civil Action" Requirement

The Secretary argues that even if plaintiff may be awarded attorneys' fees for the efforts of her counsel in connection with the proceedings in this Court and in the Second Circuit, plaintiff may not receive attorneys' fees and attendant costs for representation of plaintiff during the administrative phases of this case. Plaintiff seeks $1,912.50 in attorneys' fees in connection with such administrative proceedings. The cases which have addressed this issue have denied fees for administrative proceedings in social security cases on the grounds that the EAJA provides in section 2412(d)(1) for fees only for a "civil action." *See, e.g., Guthrie v. Schweiker,* 718 F.2d 104, 108 (4th Cir.1983); *McGill v. Secretary of HHS, supra,* 712 F.2d at 30; *Wolverton v. Schweiker, supra,* 533 F.Supp. at 424. Section 2412(d)(3) authorizes an award only for judicial review of an "adversary adjudication" as defined in 5 U.S.C. § 504(b)(1)(C). That definition includes only "an adjudication under [5 U.S.C. § 554] in which the position of the United States is represented by counsel or otherwise." Administrative proceedings before the Secretary are not considered "adversary adjudications" because in them the government does not take any "position," nor is it "represented by counsel or otherwise." *See, e.g.,* House Report at 12, *reprinted in* 1980 U.S.Code Cong. & Ad. News at 4991; *Cornella v. Schweiker,* 728 F.2d 978, 988 (8th Cir.1984); *McGill v. Secretary of HHS, supra,* 712 F.2d at 30; *Watkins v. Harris,* 566 F.Supp. 493, 497 (E.D.Pa.1983); *Operating Engineers Local No. 3, Int'l Union of Operating Engineers v. Bohn,* 541 F.Supp. 486, 495 n. 4 (D.Utah 1982); *Wolverton v. Schweiker, supra,* 533 F.Supp. at 423–24.

■ Congress' intent to exclude social security hearings from the EAJA is manifest in the conference report containing the definition of "adversary adjudication":

> It is intended that this definition precludes an award in a situation where an agency, *e.g., the Social Security Administration,* does not take a position in the adjudication. (emphasis added) Conf. Rep. No. 1434, 96th Cong., 2d Sess. 12, *reprinted in* 1980 U.S.Code Cong. & Ad. News 5003, 5012.

Similarly, the House Judiciary Committee in reporting favorably upon the EAJA expressly based its cost estimates on an exclusion of administrative proceedings under the Social Security Act. House Report at 20, *reprinted in* U.S.Code Cong. & Ad. News at 4999. The cost estimate of the Congressional Budget Office accepted by the House Report also indicates that the costs incurred in the course of administrative proceedings were not intended to fall within the purview of the EAJA. *Id.* at 22, *reprinted in* 1980 U.S.Code Cong. & Ad. News at 5001.

Plaintiff concedes that social security administrative proceedings are generally not within the purview of the EAJA, however, she urges that because in the instant case supplemental administrative proceedings were held by court order of remand, these proceedings became part of the judicial review. Thus, plaintiff maintains, the remand proceedings were transformed into an extension of the "civil action" and were brought within the perameters of the EAJA. The Court finds no support for this position and joins with other courts in rejecting it. *See, e.g., Cornella v. Schweiker, supra,* at 988–989. *Guthrie v. Schweiker, supra,* 718 F.2d at 108; *Berman v. Schweiker,* 713 F.2d 1290, 1296 (7th Cir.1983); *Watkins v. Harris, supra,* 566 F.Supp. at 497; *Wolverton v. Schweiker, supra,* 533 F.Supp. at 423–24 ("All costs, fees and expenses incurred in proceedings before the Secretary must be excluded from an award made to plaintiff under the EAJA" even though plaintiff was forced to

undergo "two complete trips through the administrative cycle").[7]

Although the Court shares plaintiff's concern that the courts uphold the purpose of fee awards under the EAJA, *i.e.*, "to improve citizen access to courts and administrative proceedings," House Report at 12, *reprinted in* 1980 U.S.Code Cong. & Ad. News at 4991, the Court is nevertheless bound by Congress' clear intent to exclude social security administrative proceedings from the EAJA. Accordingly, plaintiff's claims for attorney's fees and expenses incurred in connection with the administrative proceedings in this case are denied. This conclusion in no way precludes plaintiff from seeking an award of fees for services rendered at the administrative level under the applicable statutory and regulatory provisions of the Social Security Act.

### D. The Fee Application

Plaintiff also seeks reimbursement for attorneys' fees incurred in connection with the instant fee application. That such expenditures are compensable under the EAJA is beyond peradventure and is not disputed by the Secretary. *See e.g. Tyler Business Services, Inc. v. NLRB, supra,* 695 F.2d at 77; *Chee v. Schweiker,* 563 F.Supp. 1362, 1365 (D.Ariz.1983); *Ocasio v. Schweiker,* 540 F.Supp. 1320, 1323 (S.D.N.Y.1982). The Court finds reimbursement of attorneys' fees particularly appropriate with respect to the present application, which addressed several complex and non-routine issues involving the EAJA.

### E. Costs

In addition to attorneys' fees, plaintiff requests reimbursement of the costs she expended during the course of this litigation. Specifically, plaintiff seeks reimbursement of $164.80 photocopying costs as well as $200.00 incurred in connection with consultations with and preparation of reports by various physicians at the administrative level.

Under 28 U.S.C. § 2412(d)(2)(A), plaintiff may recover "the reasonable cost of any study, analysis, engineering report, test or project which is found by the court to be necessary for the preparation of the party's case ..." Plaintiff may also recover copying and printing costs and certain other expenses. 28 U.S.C. §§ 1920, 2412(a). However, because this Court has determined that the fees and expenses incurred by plaintiff in connection with the administrative proceedings are not within the purview of the EAJA, the Court may award to plaintiff only those costs expended during the course of judicial review. Accordingly, in the instant case, plaintiff is not entitled to reimbursement of the

---

7. Plaintiff argues in the alternative that she is entitled to reimbursement of fees and expenses incurred in connection with the administrative proceedings in this case because they were, in fact, "adversary adjudications." This argument, however, appears to have been rejected by the legislative history of the EAJA and the cases construing that statute. According to plaintiff, the Secretary adopted a partisan position in the first district court proceedings and maintained this position throughout the administrative proceedings on remand. Although in the instant case, as in most benefits cases, the Secretary opposed plaintiff's appeals to the courts to overturn the Secretary's denial of her request for benefits, such activity does not transform the administrative proceedings in this case into "adversary adjudications" within the meaning of the EAJA. As the defendant in civil actions for judicial review of an order by the Secretary denying a claimant's request for benefits, the Secretary typically files with the courts memoranda, letters and other submissions in support of the administrative determinations. Nonetheless, the legislative history of the EAJA indicates that proceedings before the Secretary are non-adversarial, and this conclusion has been determined to apply to administrative proceedings on remand. *See supra* at 1224. Thus, while the Secretary ordinarily assumes an advocatory stance during the course of judicial review of her administrative determinations, this posture has never been construed as destroying the non-adversarial character of proceedings before the Secretary. Moreover, in the instant case, plaintiff has offered no evidence to establish her claim that the Secretary assumed a partisan "position" in the administrative proceedings and imposed this position on those engaged in reviewing plaintiff's claims on remand. In short, plaintiff has failed to distinguish the administrative proceedings in this case from those in the majority of remand cases which are outside the coverage of the EAJA. *See, e.g., Hornal v. Schweiker, supra,* 551 F.Supp. at 617; *Wolverton v. Schweiker, supra,* 533 F.Supp. at 425 & n. 14.

$200.00 expended in order to obtain medical evidence for the administrative record nor may plaintiff receive the $5.80 incurred in photocopying submissions filed at the administrative level. Additionally, because this Court has held that plaintiff may not be considered a "prevailing party" within the terms of the EAJA for the purpose of plaintiff's motion for expedited discovery, plaintiff is also not entitled to the $2.10 in photocopying costs in connection with that motion. The remaining $156.90 in copying expenses, however are reimbursable under the EAJA and should be awarded to plaintiff. *See, e.g., Photo Data, Inc. v. Sawyer, supra,* 533 F.Supp. at 353.

### F. Reasonableness of the Fee Request

 The remaining issue before the Court is whether the attorneys' fees requested by plaintiff reflect fair and reasonable compensation for services rendered. The attorneys representing plaintiff in this matter expended 182.65 hours in connection with the compensable phases of the case, and seek payment at the rate of $75.00 per hour, for a total of $13,698.75.[8] According to plaintiff any fees awarded in this case will accrue entirely to the Legal Services for the Elderly, and no individual attorney will receive any part of such award. Despite the Secretary's protestations to the contrary, this Court does not believe that the time expended was inordinately high. Representation by plaintiff's attorneys was expert, effective and ultimately successful. The case was longer and more complex than the typical disability benefits case, and involved an unusually extensive record. Although most of the legal issues presented were not novel, they were far from routine. Taking into consideration the na-

ture of the proceedings and the submissions filed, the Court is satisfied that plaintiff's fee request is reasonable and fair. Additionally, the Court deems $75.00 per hour a fair and reasonable sum for the professional services expended in advancing plaintiff's cause and adopts this sum as the compensable rate.[9]

### CONCLUSION

Plaintiff's motion for reimbursement of costs and attorneys' fees pursuant to the EAJA is granted insofar as it relates to the first and second proceedings before this Court and the appeal before the Second Circuit, in all other respects, plaintiff's motion is denied. Accordingly, plaintiff is entitled to recover from the Secretary $13,-698.75 in attorney's fees and $156.90 as reimbursement for litigation costs in this action.

Settle order on notice.

**8.** The following list contains the total time expended by plaintiff's attorneys for each compensable phase of this case:

| | |
|---|---|
| First district court proceedings | 27.15 hours |
| Second Circuit proceedings | 105 hours |
| Second district court proceedings | 35.5 hours |
| Attorneys' fee application | 15 hours |
| Total | 182.65 hours |

**9.** According to 28 U.S.C. § 2412(d)(2)(A)(ii), seventy-five dollars per hour is the maximum rate

authorized under the EAJA unless special factors exist which justify a higher rate. That section provides:

> "[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."

No such factors were present in this case, and no higher rate is warranted.